## IN THE MATTER OF FRANCIS T. GLEASON, JR., AN ATTORNEY AT LAW.

March 8, 1984.

## ORDER

The Disciplinary Review Board having filed a report with the Supreme Court recommending that FRANCIS T. GLEASON, JR. of SOMERVILLE be suspended from the practice of law and respondent having accepted the findings of the Board and having consented to the discipline recommended by that Board;

It is ORDERED that the Decision and Recommendation of the Disciplinary Review Board is hereby adopted and that FRANCIS T. GLEASON, JR. of SOMERVILLE is suspended from the practice of law for a period of eighteen months and until the further order of this Court, effective March 2, 1982, see *In the Matter of Smock*, 86 *N.J.* 426 (1981); and it is further

ORDERED that FRANCIS T. GLEASON, JR. be and hereby is restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that respondent reimburse the Office of Attorney Ethics for administrative costs, including the production of transcripts; and it is further

ORDERED that respondent comply with Administrative Guideline Number 23 of the Office of Attorney Ethics dealing with suspended, disbarred or resigned attorneys.

*Decision and Recommendation of the Disciplinary Review Board*

To the Honorable Chief Justice and Associate Justices of the Supreme Court of New Jersey:

This matter is before the Board based upon a presentment filed by the District VII Ethics Committee which concerns misappropriation of trust funds by the respondent.

The respondent was retained by William Franklin in December of 1973 to represent him in a divorce action. At issue in that action, *inter alia,* was the custody of the minor child, Glenn. The custody issue was hotly contested, and was finally resolved in favor of respondent's client after several days of trial. On August 1, 1975, William Franklin refinanced his home and purchased his ex-wife's interest in the property with the proceeds. Certain other outstanding obligations were satisfied at that time, including the respondent's counsel fees for representation in the matrimonial action. The respondent testified that because of Franklin's financial situation he charged less than $2,000, although a fee of from $1,500 to $2,000 more would not

have been unreasonable. Several days later, Franklin died. Subsequent to his death, custody of Glenn, who was then about 14 years of age, again became an issue. Glenn wanted to live with his uncle in Nebraska, while his mother insisted that he live with her. The respondent became involved in the custody discussions. Ultimately, on or about August 5, 1975, the court ordered that Glenn be in the custody of his mother and appointed the respondent as guardian of Glenn, and as administrator of the estate of William.

At the time of Franklin's death, the respondent was holding in his trust account the balance of the monies obtained through the refinancing of Franklin's residence. After qualifying as administrator of the estate, the respondent began withdrawing these funds from his trust account for his personal use to meet living expenses for himself and his family. A total of about $4,500 was withdrawn in this manner beginning in August of 1975 through early 1976. As administrator of the estate, the respondent rented the decedent's home and, on June 6, 1977, participated in the closing on the sale of the premises to the tenants.

The respondent testified that he intended to repay the monies due, but was never financially able to do so in light of medical and economic difficulties. In late 1979, his eldest son was hospitalized and required three operations as the result of a brain abscess and subsequent complications which resulted in significant medical bills. In 1981, respondent's income from the practice of law, which never was substantial, further suffered as a result of inflation, high interest rates and high unemployment. Additionally, he frequently represented individuals who were either unable to pay him or who paid only a portion of his fees.

In September of 1980, Mildred M. Franklin, William Franklin's mother and grandmother of Glenn, filed an ethics complaint against the respondent claiming that no statement or accounting of her son's estate was ever given to her or her grandson. Subsequently, an audit of respondent's attorney accounts was conducted at the request of the Division of Ethics and Profes-

sional Services by Elliot Cohen, C.P.A. Mr. Cohen determined that the balance in the guardianship account as of February of 1982 should have been $4,657.77. However, respondent's trust and guardianship accounts together contained a balance of $3,666. Mr. Cohen noted the respondent's claim of entitlement to about $2,200 as estimated legal fees and commissions. Even accepting this position, Mr. Cohen found that respondent's trust and guardianship accounts were short by more than $2,400. With the exception of the Franklin monies, Mr. Cohen determined that respondent's recordkeeping was accurate and complied with the Supreme Court's rules. At hearing before the District VII Ethics Committee, the respondent, by his attorney, contended that he had a set-off at least equal to the funds taken. Specifically, respondent's counsel stated that a 5% fee on the estate assets of approximately $12,000 * would have resulted in a $600 fee as administrator, while a 5% fee on the guardianship assets of $46,000* would have resulted in a fee of $2,300. Additionally, it was argued that the respondent, as counsel to the estate, spent about 17 hours on the sale of the decedent's home, which at $75 per hour could have resulted in a charge of $1,200. Similarly, respondent was involved in the resolution of the custody problem which arose immediately after Franklin's death, and claimed to have spent 25 hours on the matter at $75 per hour for a total of $1,800. Respondent's counsel further

---

* In actuality, the gross estate was listed on the accounting reviewed in the audit as $51,424.94 which at 5%, would have resulted in an administrator's fee of about $2,571. Similarly, the guardianship assets prior to deduction of expenses, which included rental income, were listed as $14,094.99 on the accounting, 5% of which equals $705.

To confuse the issue further, the affidavit filed by respondent as administrator of the estate of William C. Franklin valued the decedent's home at a zero dollar value since it was fully mortgaged to the extent of the market value. Thus, the total gross estate was valued at $11,904.60. On that same form, the respondent listed $595 as administrator's commissions, exactly 5% of the listed value. That same figure was listed on the separate accounting reviewed during the audit. Any computation of the fees due must therefore be reduced by that amount.

noted that respondent undercharged Franklin in the divorce action.

The District VII Ethics Committee found that no claim was ever made by respondent against the estate for allowance of fees or commissions, nor did respondent make any claim for legal fees either when he filed the inheritance tax return or subsequent thereto. The Committee further noted that respondent was "unable to indicate with any precision who the responsible party was for certain of the services he performed". The Committee concluded that respondent misused trust funds held in a fiduciary capacity in violation of DR 9–102.

At hearing before the Board, the respondent stated that he was uncertain whether he could have charged the twenty-five hours spent subsequent to Franklin's death on the custody of Glenn to the estate. He noted that in addition to $600 (noted on the Inheritance Tax Affidavit) he would have computed the total amount due on his commission as $2,200, plus about $200 for commission on rent received, and that he would have requested an additional $1,300 on legal fees earned via the sale of the house. Beyond that, he would not have charged any additional fee. He did not claim that anything remained due from the matrimonial action. He agreed, however, that the $4,600 in question was improperly taken by him, in that he did not seek the approval of either the estate or the court prior to removing the money for his personal use.

## CONCLUSION AND RECOMMENDATION

Upon a review of the full record, the Board is satisfied that the conclusion of the Committee in finding unethical conduct on the part of the respondent is fully supported by clear and convincing evidence.

The respondent may have been entitled upon settlement of the accounts to total commissions of $3,330 comprised of an administrator's commission of $2,571, or 5% of the total estate assets, and a guardian's commission of $759, which includes the

6% commission due on income. Of this total, $595 was listed as commission already received on the Transfer Inheritance Tax Bureau affidavit. Thus, respondent may have been entitled to receive an additional $2,735 for his efforts as administrator and guardian over the $595 listed. His manner of taking these funds was, however, improper. Although in 1975 *N.J.S.A.* 3A:10–2(a) permitted a 5% commission on the corpus of an estate, this could be taken only "on the settlement of accounts". Commission on income up to 6% could be taken without court allowance. Prior to settlement of the account of a fiduciary, *N.J.S.A.* 3A:10–2(c) provided that a fiduciary could take only ⅕ of 1% of the first $100,000 of corpus annually without court allowance, and, where there was more than one fiduciary, that amount could be increased by "⅕ of such commissions for each fiduciary more than one". Thus, excluding income to the guardianship, the respondent was entitled to only $102.81 as executor and $17.18 as guardian on an annual basis without allowance by the court. *See Wyckoff v. O'Neil,* 72 *N.J.*Eq. 880 (E & A, 1907). As to the attorney fees claimed by respondent, these monies were not earned until the time of sale of decedent's residence on June 6, 1977. The record demonstrates that the respondent took a total of $4,500 from the estate trust funds within several months of his appointment as guardian and more than a year before the sale of the residence. Therefore, assuming respondent was entitled to $120 in annual commissions respondent misappropriated $4,380 as of early 1976. Moreover, even if respondent had not taken a counsel fee for the sale of the residence until *after* that sale, that taking would nonetheless have been premature since "(a) fiduciary, who is an attorney, may *on the settlement of his account* be allowed a fee for legal services, in addition to his commissions. But such a fee will be allowed him only on an accounting". (emphasis added) (§ 1546 —N.J. Practice—Wills etc.) See also *In re Babcock,* 112 *N.J.*Eq. 374, 375 (E & A, 1932) where the court stated "(t)he executor would be derelict if he made payment of a counsel fee without court allowance and might, if the same was improper, have been

surcharged therefor". Additionally, even accepting respondent's claim to this $1,200 and his claim to additional guardian and administrator fees of $2,681, respondent was, according to the calculations of the accountant who reviewed the matter, further out of trust by more than $700. This constitutes an additional misappropriation in violation of *DR* 9–102.

It is clear that respondent violated his obligations as an attorney and a fiduciary when he used the estate funds as his own. *DR* 9–102. His conduct is not excused by the claim that the monies ultimately were due to him. Indeed, misuse of trust funds by a fiduciary has, in the past, resulted in denial by the Court of allowance of a commission to that fiduciary. *Lathrop v. Smalley's Executors*, 23 *N.J.*Eq. 192 (1872).

The respondent has testified that he knew he was wrong at the time he took the money, that at all times he intended to return the funds although unaware of the exact amount due, that the funds were used only for necessities such as payment of his mortgage and food for his family, and that his financial difficulties never permitted repayment. Although the funds he took have not been repayed, no claim has ever been lodged with the Client's Security Fund. The respondent withdrew the funds in question during 1975 and 1976. He " . . . . . took the funds not only while in need, but when he fully intended, and reasonably expected to repay them shortly thereafter . . . . . " *In re Smock*, 86 *N.J.* 426 (1981). Furthermore, had respondent followed the proper procedure, and obtained the approval of the appropriate court or the estate, all but approximately $700 of the monies involved would have been his legitimately.

Given all of the circumstances of this case, including the mitigating factors advanced by respondent, the small sum involved, respondent's obvious contrition and remorse as well as his candor before the Committee and the Board, the Board is convinced that a suspension for a term constitutes adequate discipline here.

The Board therefore recommends that the respondent be suspended for eighteen months, retroactive to his original temporary suspension on March 2, 1982.

The Board further recommends that the respondent be required to reimburse the Office of Attorney Ethics for administrative costs, including production of transcripts.